553 A.2d 920

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Robert Peter ZOOK, Jr., Appellant.**

Supreme Court of Pennsylvania.

Re-argued Sept. 26, 1988.

Decided Feb. 2, 1989.

Reargument Denied April 13, 1989.

James P. Cullen, Thomas G. Klingensmith, Asst. Public Defenders, Vincent J. Quinn, Lancaster, for appellant.

Henry S. Kenderdine, Jr., Dist. Atty., Joseph C. Madenspacher, Asst. Dist. Atty., Robert A. Graci, Chief Deputy Atty. Gen., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

Appellant, Robert Peter Zook, Jr., was found guilty by a jury of two counts of first degree murder for the killings of Paul Conard and Sandra Wiker. A sentencing hearing was held as required by 42 Pa.C.S. § 9711 [1] and the jury determined that Appellant receive two sentences of death, one for each of the two murders. This case is now before us on automatic appeal from the Court of Common Pleas of Lancaster County pursuant to 42 Pa.C.S. § 9711(h)(1). [2] Appellant alleges that twenty-five errors occurred below, nineteen at trial and six during the sentencing phase. On one issue, we conclude that Appellant's right to request an attorney under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), *reh'g. denied*, 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981), was impaired by the authorities and, hence, that his subsequent statements were admitted into evidence improperly. For this reason, Appellant's request for a new trial must be granted. The remaining allegations of error need not be addressed.

1. 42 Pa.C.S. § 9711(a)(1) provides:
   (a) Procedure in jury trials—
   (1) After a verdict of murder of the first degree is recorded and before the jury is discharged, the court shall conduct a separate sentencing hearing in which the jury shall determine whether the defendant shall be sentenced to death or life imprisonment.

2. 42 Pa.C.S. § 9711(h) provides:
   (h) Review of death sentence.—
   (1) A sentence of death shall be subject to automatic review by the Supreme Court of Pennsylvania pursuant to its rules.

Based on our review of the evidence, viewed in a light most favorable to the Commonwealth, the facts are these. On July 24, 1985, the bodies of Paul Conard and Sandra Wiker were discovered at 868 North Queen Street in Lancaster. The murders were very brutal, with both bodies having been stabbed, strangled, bound and gagged.

On the morning of Friday, July 26, 1985, several detectives of the Lancaster Police Department, along with the District Attorney, interviewed Marcellus Barnett and Timi Buterbaugh concerning information they possessed about the Conard–Wiker murders. The two individuals had arrived at the police station earlier in the evening and were questioned until about 1:00 or 1:30 a.m. Barnett told the police about his involvement in giving Appellant the layout of Conard's apartment and other information possibly linking Appellant to the murders. Barnett also related to the police that the Appellant came to see him after the murders and told him that he, the Appellant, and his confederates had forced their way into Conard's house by gunpoint, had tied up both Conard and Wiker, stabbed them, took guns and money, and left.

Barnett further stated that he believed that Appellant was staying at the Parkside Motel under an assumed name and that he was probably armed. (N.T., Pre–Trial Hearing, pp. 199–200, 219–224.) The police decided to place a stakeout at the motel in the event Appellant attempted to leave. Two police officers were sent to the motel at 3:00 a.m., were advised of the situation and were instructed not to do anything unless it appeared that Appellant was attempting to leave. The officers were informed that Appellant might be armed and dangerous. Appellant had registered at the Parkside Hotel on July 25, 1985, under the assumed name of James Long. At 6:26 a.m., July 26, 1985, Appellant left his motel room, and pursuant to their instructions, the police officers placed him under arrest. Appellant had in his possession a knife and a revolver at that time and two rings later identified as belonging to Paul Conard. (N.T., Pre–Trial Hearing, pp. 177–205).

After Appellant was arrested, he was brought to police headquarters, and was later arraigned. Shortly after Appellant's arrival at headquarters, he was questioned on the murders and on the weapons in his possession.

■ At trial, Lancaster Police Lieutenant Michael Landis testified with respect to his interrogation of Appellant on the morning of July 26, 1985, shortly after Appellant had been taken into custody and read his *Miranda* rights.[3] Appellant was questioned about the incriminating rings and the gun found in his possession. He offered an explanation of his whereabouts on the crucial dates in question, but could not provide the names of witnesses to corroborate his story. He could offer no cogent explanation as to why he checked into the motel under an alias. Appellant claimed that he got the gun and the rings in exchange for drugs (a quarter gram of crank—methamphetamine) but would not, or could not, name the other party to the transaction. When asked whether he knew Sandy Wiker (one of the victims in this case), Appellant denied knowing her. He was then confronted with the fact that her name was listed in an address book taken from him previously. Appellant could not explain the discrepancy, became angry, and asserted that all the police had him for was receiving stolen property. (N.T., pp. 1078–1087). Under the circumstances, and especially in light of the fact that no eyewitnesses to these crimes were called to testify by the Commonwealth, this testimony as to Appellant's answers during the interrogation was highly damaging to Appellant's cause. If this testimony of Lieutenant Landis was improperly admitted at trial, in whole or in part, and we conclude that it was, Appellant is clearly entitled to a new trial.

■ At the pre-trial hearing held in this case to determine whether or not Appellant's statements should have been suppressed, the Assistant District Attorney elicited the following on direct examination of Lieutenant Landis:

3. No tape recording of the interrogation was made. (N.T., Pre–Trial Hearing, p. 279.)

Q. During the interview, did Mr. Zook ever request an attorney?

A. Approximately—I don't know, two-thirds of the way into the interview, something like that, right around the time we got through talking about whether he knew Conard or Wiker, he asked if he could use the phone to call his mother to see if she could get him an attorney. At that point, I said are you saying you want us to stop questioning you until you have an attorney present? And he said no, go ahead and finish with what you are doing. That was the only time that he came close to asking for an attorney, if that's what that was.

(N.T., Pre–Trial Hearing, p. 269).

We think that the trial court was in error in failing to suppress all statements made by Appellant after he made the request to use the phone to have his mother get an attorney.[4] In *Edwards v. Arizona, supra,* the United States Supreme Court held that:

When an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

4. It is impossible to determine from this record at precisely what point in the interrogation the request for an attorney occurred. It is impossible, therefore, to ascertain which damaging statements were made before the request for an attorney as opposed to after. If and when the Commonwealth decides to re-try Appellant and seeks to use the results of this interrogation as evidence, the trial court will be obligated to make certain that any damaging statements given by Appellant were given *before* his request for an attorney, if they are to be used against him at trial.

> .... We ... emphasize that it is inconsistent with
> Miranda and its progeny for the authorities, at their
> instance, to reinterrogate an accused in custody if he has
> clearly asserted his right to counsel.

451 U.S. at 484–85, 101 S.Ct. at 1884–85 (footnote omitted).

In *Commonwealth v. Hubble*, 509 Pa. 497, 504 A.2d 168 (1986), (per Larsen, J., with two Justices concurring, one Justice concurring specially, and one Justice concurring in part), we determined that the accused's utterances regarding an attorney were too imprecise to trigger the prophylactic rule barring further police-initiated interrogation as required by *Edwards v. Arizona, supra*. "To hold that every utterance of the word 'lawyer' automatically" invokes *Edwards* "would be far too rigid and would not serve the interests of justice." 504 A.2d at 175. We also concluded that the accused was not misled by an erroneous police statement regarding the public defender. We then included the contested utterances within the totality of circumstances test of *Oregon v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983), which holds that where a suspect rather than the police initiates further conversation, the evidence is not suppressed automatically under *Edwards*. We buttressed this last conclusion by noting as well that even if the initial admission had been infirm, Hubble voluntarily gave statements later (the next day) which in any case cured any original defect.

In contrast with *Hubble, supra*, Appellant clearly invoked his rights under *Miranda* to secure counsel. Appellant's request here to use the phone to call his mother to see if she could get him an attorney is a clear exercise of that right. Further interrogation at that point was not instigated by Appellant but by Lieutenant Landis. We do not view Lt. Landis' *continued* questioning as intended to clarify Appellant's desires respecting counsel. What, in Appellant's request, needs clarification? What was equivocal or ambiguous? Appellant reportedly said, "Can I use the phone to call my mother to see if she can get me an attorney?" to paraphrase Lt. Landis' testimony. The only

acceptable response from the police should have been "YES"! Not, "are you saying you want us to stop questioning you until you have an attorney present?" He did not unilaterally initiate continued interrogation as the suspect did in *Hubble*. He was led into continued questioning by Lt. Landis. That is the distinguishing factor between this case and *Hubble*.

■ Moreover, Appellant's subsequent cooperation cannot be used to cast doubt on the validity of his initial assertion of the right to counsel. See, *Smith v. Illinois*, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984).

Appellant's request for a new trial is granted.

LARSEN, J., files a dissenting opinion in which FLAHERTY and McDERMOTT, JJ., join.

LARSEN, Justice, dissenting.

I dissent. Contrary to the majority's conclusion, appellant's statements were not inadmissible under *Commonwealth v. Hubble*, 509 Pa. 497, 504 A.2d 168 (1986) because, again contrary to the majority's assertion, appellant did not "clearly invoke his rights under *Miranda* to secure counsel."

As the record demonstrates, appellant merely "asked if he could use the phone to call his mother to see if she could get him an attorney." Quite legitimately, the police officer queried "are you saying you want us to stop questioning you until you have an attorney present?" Appellant responded "no, go ahead and finish with what you are doing."

There is nothing in this exchange (which was "the only time he came close to asking for an attorney") that would trigger the prophylactic rule of exclusion of *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), *reh'g denied*, 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981). Appellant's "request for an attorney" was equivocal and was properly clarified by the police

218

officer's response. Accordingly, appellant's statements were properly admitted by the trial court.

FLAHERTY and McDERMOTT, JJ., join in this dissenting opinion.