565 A.2d 458

**COMMONWEALTH of Pennsylvania**

v.

**William Irving DAVIS A/K/A Bean Davis A/K/A William Irwin Davis A/K/A William Boo Davis, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 31, 1989.

Filed Oct. 16, 1989.

Melaine S. Rothey, Asst. Public Defender, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy Dist. Atty., Pittsburgh, for Com.

Before CIRILLO, President Judge, and ROWLEY and TAMILIA, JJ.

ROWLEY, Judge:

Is the statement "I have a lawyer," made by a defendant at his preliminary arraignment, sufficient to bar police-initiated questioning several days later? This is one of several issues presented by appellant in his appeal from the judgment of sentence imposed following his conviction by a jury on charges of robbery, conspiracy, theft, receiving stolen property, recklessly endangering another person, two counts of third degree murder and three counts of homicide by vehicle. Having carefully considered the arguments of counsel, and the record as certified to us, we affirm.

The facts are as follows: On October 16, 1984, Jobe Wright, Terrance George and appellant drove through the Monroeville Mall parking lot in a red Chevrolet Camaro. George reached out of the car and snatched the purse of Marjorie Wilson. Appellant and his companions then exited the parking lot and proceeded along Route 22 west-bound towards Pittsburgh. After travelling approximately one-half mile, appellant, who was driving, lost control of the vehicle and crossed over into the lanes of oncoming traffic.

In the tragic collision which ensued, an elderly couple died. Terrance George also lost his life.

Appellant fled the scene of the accident on foot. He turned himself in to police several days later. Jobe Wright, who was injured and in a dazed state, proceeded one-quarter mile on foot to the parking lot of Sears, where he was attended to by a Monroeville Police Officer. Eventually, paramedics took Wright to the Forbes Health System. Wright recovered from his injuries and stood trial with appellant on one charge relating to the fatal collision.[1]

Following the jury's guilty verdict, appellant filed timely post-verdict motions which were denied. He was sentenced to an aggregate term of imprisonment of not less than 18 years, 3 months nor more than 36½ years. On appeal he presents five issues consisting of two alleged pre-trial errors and three alleged trial errors.

## I.

Appellant first argues that the trial court erred in failing to suppress allegedly inculpatory statements made by him to the police while he was incarcerated. The precise question before us is whether the statement "I have a lawyer" made by a defendant at his preliminary arraignment in response to the magistrate's statement that he has the right to representation by counsel and that counsel would be provided if he cannot afford it, is an invocation of his Fifth Amendment right against self-incrimination as protected by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Appellant specifically claims that his statement, under *Edwards,* was sufficient to bar the police from initiating any subsequent interviews with him.

1. See our memorandum decision in *Commonwealth v. Jobe Wright,* No. 346 Pittsburgh, 1986. As to additional charges pending against Wright, see *infra* note 6.

Appellant has *not* claimed that his Sixth Amendment right to counsel has been violated.[2] Nor has he claimed that the *Miranda* warnings given to him before questioning were inadequate. Additionally, there has been no suggestion that the statements were made involuntarily. Thus, the issue raised by appellant is very narrow: whether appellant "expressed his desire to deal with the police only through counsel," prior to the police-initiated custodial interrogation that elicited the statements he now argues should have been suppressed. The trial court concluded that appellant did not invoke his right to the presence of counsel during questioning. For the reasons which follow, we agree.

### A.

In the landmark case of *Miranda v. Arizona, supra,* the U.S. Supreme Court held that where an "individual states that he wants an attorney, the interrogation must cease until an attorney is present." *Id.,* 384 U.S. at 474, 86 S.Ct. at 1627. Fifteen years later, in *Edwards v. Arizona, supra,* the Supreme Court, as a corollary to its earlier decision in *Miranda,* adopted a bright-line rule "that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights.... [and that an accused having] expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him,

2. The Sixth Amendment states, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S.C.A. Const. Amend. 6. The Sixth Amendment provides a right to counsel at a "critical stage" after the initiation of adversary judicial proceedings. *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986) ("if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid").

unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. at 484–485, 101 S.Ct. at 1884–1885.

In the post-*Miranda* and post-*Edwards* case of *Smith v. Illinois*, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984), the Supreme Court noted that the rigid prophylactic rule of *Edwards*

embodies two distinct inquiries. First, courts must determine whether the accused actually invoked his right to counsel. Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked.

*Id.* at 95, 105 S.Ct. at 492–493. It is the threshold inquiry with which we are concerned in this case.

### B.

Appellant was taken into custody during the late evening hours of October 18th or 19th, 1984, two or three days after the collision.[3] He was driven to the Public Safety Building in Pittsburgh, where his preliminary arraignment occurred in the early morning hours of the next day. Appellant contends that the invocation of his right to have counsel present before or during questioning occurred at the preliminary arraignment when he stated, "I have a lawyer." The questioning which appellant claims violated his rights occurred on October 21st and October 25th. On October 21st Officer William Naccarati of the Wilkins Township Police Department read appellant his *Miranda* rights and asked appellant whether he understood them. Appellant replied that he did, and signed a written form containing his rights. That document was entered into evidence at the April 22,

3. The record is in conflict on this point. At trial, Officer Naccarati testified that the arrest occurred on October 18, 1984. However, at a post-trial evidentiary hearing held in October, 1986, Officer Naccarati testified that the arrest occurred on October 19th.

1985 Suppression Hearing as Commonwealth Exhibit Number 4.

On October 25th Lieutenant Louis Smith of the Monroeville Police Department sought to interview appellant. Lt. Smith read appellant his *Miranda* rights. Appellant initialed each *Miranda* question with his initials, "WD," indicating his understanding of the question. This form, containing appellant's initials, was introduced into evidence at the April 12, 1985 suppression hearing as Commonwealth Exhibit Number 1. After signing and initialling both forms, appellant proceeded to voluntarily give statements which he claims are incriminating.

To reiterate, the narrow question before us is whether appellant's statement to the magistrate at the October 19th or 20th preliminary arraignment is sufficient to bar police-initiated interrogations on October 21st and 25th under *Edwards.* In footnote 3 of *Smith v. Illinois, supra,* the Supreme Court indicated the wide range of positions taken by courts on this issue:

> Some courts have held that all questioning must cease upon any request for or reference to counsel, however equivocal or ambiguous. Others have attempted to define a threshold standard of clarity for such requests, and have held that requests falling below this threshold do not trigger the right to counsel. Still others have adopted a third approach, holding that when an accused makes an equivocal statement that "arguably" can be construed as a request for counsel, all interrogation must immediately cease except for narrow questions designed to "clarify" the earlier statement and the accused's desires respecting counsel.

*Smith v. Illinois, supra,* 469 U.S. 91, 96 n. 3, 105 S.Ct. 490, 493 n. 3 (citations omitted). The Supreme Court found no need to resolve these conflicting positions in *Smith* because judgment "must be reversed irrespective of which standard is applied." *Id.* at 96, 105 S.Ct. at 493. Thus, the wide

variety of approaches to the issue continues throughout the various state and federal jurisdictions.[4]

The case of *Commonwealth v. Hubble*, 509 Pa. 497, 504 A.2d 168 (1986), though a plurality decision, suggests that our Supreme Court would not adopt the first of the three schools of thought outlined in *Smith v. Illinois*. Reading all of the opinions in *Hubble*, it seems apparent that the Court would adopt the view that not every use of the word "lawyer" would result in invocation of a defendant's rights under *Edwards*. In *Hubble*, Justice Larsen wrote,

> To hold that every utterance of the word "lawyer" automatically erects the *Edwards'* "cone of silence" around the accused, thus insulating him from *all* further police-initiated questioning and communication, would be far too rigid and would not serve the interests or needs of justice.

509 Pa. at 511, 504 A.2d at 175 (emphasis in original). *Accord, Collins v. Francis*, 728 F.2d 1322 (11th Cir., 1984) ("[Defendant's] request for counsel at his arraignment did not place his request in the *Miranda/Edwards* fifth amendment right-to-counsel posture").

In the case at bar, the evidence as to what transpired at the preliminary arraignment is not totally clear. No court reporter was present, the participants' memories of the proceeding are sketchy, and appellant did not testify regarding the proceeding. Nevertheless, in considering the evidence in the light most favorable to the appellant, we have found that he stated "I have a lawyer." Clearly, however, this comment was made in response to the magistrate's statement that appellant has a right, pursuant to the Sixth Amendment, to representation by counsel after the initiation of judicial proceedings. Thus, appellant's response does not even begin to approach a declaration that he wanted to have a lawyer present with him during questioning, pursuant to his Fifth Amendment rights. In *Connecticut v. Barrett*, 479 U.S. 523, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987), the Supreme Court noted that "[t]he fundamen-

---

4. See cases listed in U.S.C.A. Const. Amend. 5, note 753.

tal purpose of the Court's decision in *Miranda* was 'to assure that *the individual's right to choose* between speech and silence remains unfettered throughout the interrogation process.' " 107 S.Ct. at 831, quoting *Miranda*, 384 U.S. at 469, 86 S.Ct. at 1625 (emphasis supplied by Chief Justice Rehnquist in *Barrett*). Not having invoked his right to have counsel present during questioning at his preliminary arraignment, appellant was properly given the *choice* of making a statement when his *Miranda* rights were read to him and understood by him on October 21st and 25th.

We emphasize that our decision in no way diminishes the importance of *Edwards, Smith v. Illinois,* and *Barrett* in safeguarding a defendant's right to have counsel present at questioning. In *Edwards,* the defendant stated *during interrogation* "I want an attorney present before making a deal." 451 U.S. at 479, 101 S.Ct. at 1882. In *Smith,* the defendant was asked *during interrogation* whether he wanted a lawyer present at questioning. He replied, "Uh, yeah. I'd like to do that." 469 U.S. at 93, 105 S.Ct. at 491. In *Barrett,* appellant stated *during questioning* that he was willing to talk about the incident, but he did not want to put anything in writing until his attorney arrived. 107 S.Ct. at 830.

In the case at bar, however, appellant's statement that he had a lawyer, directed to the magistrate, was made completely outside the interrogation setting, several days prior to any questioning. We find no precedent requiring us to hold that appellant's statement under these circumstances "erected the *Edwards* cone of silence" so as to bar subsequent police-initiated questioning. A decision to the contrary would fly in the face of *Hubble, supra.* Therefore, the trial court properly refused to suppress the statements made to police by appellant.

## II.

■ Appellant next argues that the trial court erred in failing to sever the cases of appellant and his co-defendant,

Jobe Wright. He insists that (1) their defenses were at loggerheads because each insists he was not driving, and (2) the fact that fewer charges were pending against his co-defendant predisposed the jury towards finding him guilty. We disagree.

We are governed by the following standard of review:

[Q]uestions of consolidation or severance of defendants for trial rest in the discretion of the trial judge and his rulings on such matters will not be disturbed on appeal except for manifest abuse of discretion. When the crimes charged arise from the same acts or series of acts and much of the same evidence is necessary or applicable to all defendants, a joint trial is 'permissible, if not advisable.' Especially where a conspiracy to commit crime is alleged, the defendants should be tried together, 'unless it can be shown that one or more of the defendants will be actually prejudiced by doing so.'

*Commonwealth v. Hamm*, 325 Pa.Super. 401, 409–10, 473 A.2d 128, 132–33 (1984) (citations omitted). Our Court stated as a general proposition in *Hamm* that "joint trials should not be ordered where defendants assert antagonistic defenses." *Id.*, 325 Pa.Superior Ct. at 411, 473 A.2d at 133. However, in *Commonwealth v. Bennie*, 352 Pa.Super. 558, 508 A.2d 1211 (1986), we stated further that

[c]onsolidation is proper unless the defenses are 'irreconcilable and exclusive.' The defenses *must conflict at the core;* mere divergence on peripheral matters or mere hostility between co-defendants does not require severance.

*Id.*, 352 Pa.Superior Ct. at 566–67, 508 A.2d at 1215 (emphasis added; citations omitted).

Appellant's first claim is that his defense conflicted with that of his co-defendant, Wright, so as to justify separate trials. The gravamen of his claim is that each defendant claimed that he was not driving the car when it crashed.

The "defenses" were presented in the following manner. Appellant gave a statement to police after he turned him-

self in, in which he asserted that he had not been driving the car. Appellant stated he thought Terrance George had been driving, although he was not sure.[5] Appellant then changed his statement to say that Terrance George was in the passenger seat at the time of the purse snatch. N.T. at 487–488. Appellant did not testify at trial, but his statements, containing the above assertions, were admitted into evidence. Jobe Wright testified at trial, however, and stated that appellant was driving when he picked him (Wright) up. Terrance George got into the front passenger's seat, and Wright climbed into the back seat. Thus, it is clear from the record that Wright's testimony places appellant in the driver's seat during the entire series of events.

The fact that appellant and his co-defendant each claim not to have been driving at the time of the collision is not an "irreconcilable and exclusive" defense, especially under the circumstances of this case. First, with *three* people in the car the jury could have found that both Wright and appellant were not driving when the collision occurred. For this reason alone, the defenses did not "conflict at the core." Second, because Wright took the stand, appellant's counsel had ample opportunity to cast doubt upon the veracity of Wright's testimony that appellant was driving, and not Terrance George. Therefore, the trial judge did not abuse his discretion in refusing to sever the cases.

On the issue of severance, appellant cites no cases for, and we find no support for, the proposition that appellant was prejudiced by the fact that his co-defendant, Jobe Wright, had fewer charges pending against him than did appellant.[6] Thus, we find no merit to this argument.

5. The policeman asked: "Who was driving [at the time of the accident]?" Appellant replied: "I don't know. Terry was driving out there. *I don't know who was driving back.*" N.T. at 484 (emphasis added).

6. The Commonwealth notes in its brief that Wright was a juvenile at the time of the collision. Consequently, the criminal homicide charge was the only charge certified to the Court of Common Pleas. At the time of the suppression hearing, additional charges relating to the purse snatch and collision were pending against Wright in juvenile court. Suppression Hearing Transcript at 51.

Therefore, since our review of the record does not disclose the existence of any prejudice to appellant or any abuse of discretion by the trial judge in denying appellant's motion to sever, he is not entitled to a new trial on the basis of this issue.

## III.

■ Appellant next argues that the trial court erred in failing to redact the statement "we did a purse snatch" made by his co-defendant, Jobe Wright, to an emergency room nurse. Appellant argues that the statement should have been submitted to the jury as "I did a purse snatch," so as not to implicate appellant in the crime. Appellant cites *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), in support of this argument.

In *Bruton*, the Supreme Court held that defendant Bruton was denied his constitutional right to confront the witnesses against him because his co-defendant's out of court confession to a postal inspector implicating both men in an armed robbery was received in evidence *without the co-defendant taking the stand*. Justice Brennan, writing for the Court, noted that the confession provided "substantial, perhaps even critical, weight to the Government's case *in a form not subject to cross-examination*." 391 U.S. at 128, 88 S.Ct. at 1623 (emphasis added). Thus, the Court held the confession of the joint defendant inadmissible.

In the case at bar, the statement at issue came about in the following manner. Following the collision, Jobe Wright was taken to a local emergency room for treatment of injuries. Coincidentally, shortly before Wright's arrival at the emergency room the FBI called to warn medical personnel to be on the alert for young black males who had received facial lacerations in an unrelated bank robbery.

Testimony at trial established that during the course of treating Jobe Wright, Nurse DeStein asked him if he had participated in the bank robbery. Wright responded, "We snatched a purse." N.T. at 278. Counsel for appellant immediately objected to the introduction of this statement.

The objection was overruled, and the statement was admitted. *Id.*

In this case, appellant was not referred to by name in Wright's statement to Nurse DeStein. Nevertheless, appellant's counsel argues on appeal that his client was prejudiced by introduction of the statement because "we" can only refer to the individuals present in the car, one of whom is dead and the other of whom is the appellant. Thus, he claims that under *Bruton,* the statement is inadmissible and a new trial must be granted. We disagree.

The protections of *Bruton* are unavailable to appellant for two reasons. First and foremost, the maker of the statement, Jobe Wright, took the stand at trial and was available for cross-examination. Indeed, appellant's counsel cross-examined Wright at pages 634–40 and 642–44 of the transcript and had ample opportunity to attempt to disprove Wright's assertion that appellant was involved in the purse snatching incident at the Mall. In a recent decision re-examining *Bruton,* the Supreme Court reiterated the holding that "where two defendants are tried jointly, the pretrial confession of one cannot be admitted against the other unless the confessing defendant takes the stand." *Richardson v. Marsh,* 481 U.S. 200, 206, 107 S.Ct. 1702, 1706, 95 L.Ed.2d 176 (1987). Since Wright took the stand at trial, *Bruton* is not a bar to admission of the statement.

Second, even if Wright had not testified this Court has held, under facts similar to those of the case at bar, that a statement containing references to "other fellows", "they", "someone", "one of the guys", but not to anyone by name, does not violate *Bruton. Commonwealth v. Rawls,* 276 Pa.Super. 89, 419 A.2d 109 (1980), *appeal dismissed,* 499 Pa. 267, 452 A.2d 1347 (1982); *see also Commonwealth v. Howard,* 375 Pa.Super. 43, 543 A.2d 1169 (1988) (statement made by a co-defendant to a man who accused "them" of using his car during a murder did not violate *Bruton* ).[7]

---

**7.** *But see Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). The majority specifically noted: "We express no opinion on the admissibility of a confession in which the defendant's name

For both of these reasons we hold that the trial court did not err in refusing to redact the statement made by codefendant Wright to Nurse DeStein regarding the purse snatch.

## IV.

■ Appellant next argues that the evidence presented by the Commonwealth was insufficient to sustain his conviction for third degree murder because such evidence does not support a finding that he acted with malice. He argues primarily that his acquittal by the jury on the second degree (felony-murder) charges conclusively proves that the jury found he did not act with malice in bringing about the deaths of the two elderly victims.

Generally speaking, "[m]alice aforethought is the general intent prerequisite to a finding of murder." *Commonwealth v. Weinstein*, 499 Pa. 106, 115, 451 A.2d 1344, 1348 (1982). In analyzing appellant's argument, however, we must examine the element of malice as it particularly relates to the charge of second degree murder. Our Supreme Court has stated that common law felony murder[8]

is a means of imputing malice where it may not exist expressly. Under this rule, the malice necessary to make a killing, even an accidental one, murder, is constructively inferred from the malice incident to the perpetration of the initial felony.

*Commonwealth v. Yuknavich*, 448 Pa. 502, 295 A.2d 290, 292 (1972), *quoting Commonwealth ex rel. Smith v. Myers*, 438 Pa. 218, 224–225, 261 A.2d 550, 553 (1970). Our Court explained further:

has been replaced with a symbol or neutral pronoun." 107 S.Ct. at 1709, n. 5.

8. Common law felony murder was codified by our legislature with the enactment of 18 Pa.C.S. § 2502:

**(b) Murder in the second degree.**—A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.

[E]ach crime enumerated in the felony-murder statute is a crime of specific intent.... Once such intent is shown, the felony-murder doctrine merely imputes the malice incident to the intentional felony over to the killing

. . . . .

*Commonwealth v. Rawls,* 328 Pa.Super. 469, 473–74, 477 A.2d 540, 543 (1984). Appellant appears to be arguing that his acquittal by the jury of second degree murder represents a finding by the jury that there was *no* malice present to support *any* charge of murder. We disagree for several reasons.

First, our Court has held that "[a]n acquittal cannot be interpreted as a specific finding in relation to some of the evidence. [The acquittal may be] ... no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity." *Commonwealth v. Parrotto,* 189 Pa.Super. 415, 422, 150 A.2d 396, 399 (1959); *see also Commonwealth v. Yachymiak,* 351 Pa.Super. 361, 505 A.2d 1024 (1986). Thus, to the extent this is viewed by appellant as an inconsistent verdict, Pennsylvania courts offer no basis for reversal. *Commonwealth v. Carter,* 444 Pa. 405, 282 A.2d 375 (1971); *Commonwealth v. Davison,* 243 Pa.Super. 12, 364 A.2d 425 (1976).

Second, legal malice may consist of either "an express intent to kill or inflict great bodily harm" *or* of a "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences and a mind regardless of social duty" which indicates an unjustified disregard for the probability of death or great bodily harm and an extreme indifference to the value of human life. *Commonwealth v. Boyd,* 461 Pa. 17, 334 A.2d 610, 613 (1975). Further, it is well settled in this Commonwealth that legal malice may be inferred and found *from the attending circumstances* of the act resulting in death. *Commonwealth v. Bowden,* 456 Pa. 278, 309 A.2d 714 (1973) (emphasis added).

In the case of *Commonwealth v. Taylor,* 461 Pa. 557, 337 A.2d 545 (1975) our Supreme Court was called upon to

determine whether the requisite malice existed to sustain a verdict of murder against a drunk driver who ran down a 14–year–old cyclist in mid-afternoon. Testimony established that the weather was dry and clear, appellant was travelling 60 to 80 miles per hour in the vicinity of a city park, and that the decedent's body was hurled 115 feet through the air. Our Supreme Court held:

> From the evidence presented to the trier of fact, we are satisfied that there was sufficient basis to find the recklessness of consequence and a mind regardless of social duty which is necessary to establish the presence of malice. The intoxicated condition of the driver, the excessive rate of speed which he was travelling, the distance the bodies and bicycles were propelled upon impact, his awareness that this was an area where children were likely to traverse, the absence of any physical or climatic condition which could explain or contribute to the happening of the accident and the appellant's failure to stop immediately after impact, all exhibit the wickedness of disposition, the hardness of heart, cruelty and recklessness associated with murder in the second degree.[9]

*Id.*, 461 Pa. at 563–64, 337 A.2d 548. Similarly, in the case at bar, the circumstance that appellant was fleeing the scene of a purse snatch, the excessive rate of speed at which he was travelling, the "weaving" of the automobile through traffic, the result of death on impact (or immediately thereafter) of three of the five occupants in the two cars, appellant's awareness that this was a traffic artery to one of the large area shopping malls, the absence of any physical or climatic condition which could explain or contribute to the happening of the accident, and appellant's flight from the scene all exhibit the wickedness of disposition, the hardness of heart, cruelty and recklessness associated with third degree murder. *Commonwealth v. Taylor, id.*

---

9. Prior to the 1974 amendment of 18 Pa.C.S. § 2502, "Murder," the elements of second degree murder were identical to the elements of present-day third degree murder, the crime of which appellant in the case herein was convicted. See Historical Note to 18 Pa.C.S. § 2502. Therefore, the Supreme Court's holding in *Taylor* is applicable with equal force to the case at bar.

Therefore, we hold that there is ample evidence to support the jury's finding of malice in the manner by which appellant fled from the scene.

Third, and most importantly, our Court has specifically held that a verdict of guilty of third degree murder is *not* inconsistent with findings of not guilty of first or second degree murder and voluntary and involuntary manslaughter. *Commonwealth v. Boccella,* 266 Pa.Super. 485, 405 A.2d 923 (1979). In summary, appellant's argument that the jury's verdict proves that malice does not exist must fail.

## V.

Finally, appellant argues that a mistrial should have been granted due to allegedly improper remarks made by the prosecutor in his closing statement. Our Court has held that "[a] prosecutor has an obligation during closing arguments to present the facts in a manner that will lead the jury to a dispassionate and objective evaluation and will produce judgment warranted by the evidence." *Commonwealth v. Davis,* 363 Pa.Super. 562, 583, 526 A.2d 1205, 1219 (1987). "Only those remarks whose 'unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict' will necessitate the ordering of a new trial." *Commonwealth v. Goins,* 508 Pa. 270, 276–277, 495 A.2d 527, 530 (1985); *Commonwealth v. Simon,* 432 Pa. 386, 248 A.2d 289 (1968).

Appellant points to two sections from the prosecutor's closing which he claims are prejudicial. The first relates to appellant's location within the automobile:

According to Boo Davis, according to his statement, no one was driving the car. He is in the back seat, Terrance George is in the front passenger's seat. No wonder the car crashed.

N.T. at 821. Appellant argues that this statement was prejudicial because it misstated the facts and fixed in the

jurors' minds the belief that appellant's "alleged version of the events was incredible." We disagree. At most, appellant can claim only that the remark was sarcastic. The record clearly reveals that appellant's version of the events, as given to the police in his statement, was fraught with uncertainty and ambiguity regarding which of the three occupants was driving the car. The Commonwealth merely emphasized this ambiguity, which already had been apparent to the jury. Moreover, following defense counsel's objection, and a discussion at sidebar, the assistant district attorney accurately summarized for the jury the contents of appellant's statement to the police regarding the identity of the driver. Thus, although the prosecutor's remark was strong and arguably sarcastic, it was based on the evidence presented and we can find no prejudice. *Commonwealth v. Davis, supra.*

■ The second allegedly prejudicial remark, according to appellant, is as follows:

Ladies and gentlemen, felony murder. During the perpetration of a felony murder which includes commission or the attempt to commit the crime or the flight therefrom, I submit to you, ladies and gentlemen, Mr. Davis driving that car at 60 to 70 miles an hour down that highway, he is doing it for a reason, to get away to avoid apprehension known only to Mr. Wright and Mr. George what their activity was. What did they do after the car crashes is totally consistent with their behavior while they are driving down the road. While Mr. Davis is driving the car, they are fleeing the area. What do both of them attempt to do after the crash? They don't stay there and help their friend. They both flee. Flight from the commission of the crime, from the robbery, Elmer and Sarah Burger died for no other reason. They were on that highway while Mr. Davis, Mr. Wright, and Mr. George decided to do a purse snatch at the Monroeville Mall, and because they happened to be on this roadway while these three are trying to get away, they are dead. And that is not right, and the law permits you and gives

you the power because you are the representatives of our community, gives you the power to find those men guilty.

I say this is not to happen. We won't permit this to happen. We won't permit innocent people to be killed on our highways because this happened while they are out committing crimes such as robbery, and rape, and burglary, and arson. In this case, robbery.

Mr. Davis was driving that car on Route 22 noontime by the Monroeville Mall at 60, 70 miles an hour, somebody on that roadway is going to die, and I submit to you it just happened that it was Elmer and Sarah Burger. It just as easily could have been anyone else that got up on that stand and testified that he was on the roadway that day, *Dawn Noel,* or *Evelyn Catley, Mr. Clark,* anybody. The way that car was being driven on that highway at that time of day, someone was going to die.

N.T. at 838–39 (emphasis added). Appellant claims this portion of the prosecutor's closing was prejudicial in three respects: it inflamed the passions of the jury with unwarranted references to rape, burglary and arson; it contained the unwarranted conclusion that "someone was going to die" on the highway merely because appellant was travelling 60 to 70 miles per hour; and it impermissibly "personalized" the incident by hypothetically placing live witnesses who testified at trial in the position of the elderly couple which died.

We find no merit to these arguments. "[A] reviewing court must consider an allegedly improper comment in light of the context in which it occurred and its possible effect on the fact-finder." *Commonwealth v. Martin,* 307 Pa.Super. 118, 125, 452 A.2d 1066, 1069 (1982). The reference to rape, burglary and arson was an isolated occurrence which was immediately cured when the prosecutor stated, "[i]n this case, robbery." Moreover, these remarks were aimed at getting the jury to return a verdict of second degree murder, i.e. felony murder. This the jury did not do, returning a verdict of guilty of third degree murder instead. Therefore, although the prosecutor did not overstep his bounds

under the circumstances of this case, neither has appellant demonstrated any prejudice.

Likewise, under the circumstances of this case, we find no merit to the contention that the statement "someone was going to die" was impermissible argument. Our Supreme Court has stated that a prosecutor "must have reasonable latitude in presenting his case and must be free as well to make his arguments with 'logical force and vigor.' " *Commonwealth v. Johnson*, 516 Pa. 527, 530, 533 A.2d 994, 996 (1987), *quoting Commonwealth v. Cronin*, 464 Pa. 138, 143, 346 A.2d 59, 62 (1975). The facts of this case were necessarily gruesome, given that three people died immediately upon impact, or very soon thereafter. The Court in *Johnson* indicated that the brightest line delineating permissible and impermissible prosecutorial conduct is drawn "at the point where the language and inferences of the summation no longer relate back to the evidence on the record." *Id.* That line was not crossed by the prosecution in this instance.

Last, appellant objects to the prosecution's invocation of witnesses' names and the suggestion that they, instead of the victims, could have been killed. Ms. Noel, Ms. Catley and Mr. Clark each testified that he or she was on the road, in the immediate vicinity of the accident, and witnessed the accident. Ms. Noel was travelling two car lengths behind the car occupied by the elderly victims. She witnessed the Camaro, travelling at a high rate of speed, cross the median strip and collide head-on with the victims, directly in front of her. "[I]t scared me," she testified, "because it was coming so fast." N.T. at 228.

Ms. Catley was travelling toward Pittsburgh, and testified that the Camaro passed her, weaving in and out of traffic, crossed the median strip, and collided with the victims' car. Mr. Clark also was travelling toward Pittsburgh when the Camaro "cut in front of me, cut real sharp, lost control, slammed on his brakes, went over into the other lane and hit a car." N.T. at 559. The testimony of each witness reveals in startling reality that he or she came

within seconds of losing a life. The prosecutor's comments, strong as they were, amounted to appropriate references to the testimony.

In conclusion, our review of the record in this case, including the closing arguments of counsel, is devoid of anything which would require us to interfere with the discretion of the trial judge who was in a position to observe the demeanor of the lawyers at trial. *Commonwealth v. Johnson, supra.*

Judgment of sentence affirmed.