## Commonwealth v. Tenney

*Mark D. Waitlevertch, assistant district attorney,* for the Commonwealth.
*David P. Truax,* for defendant.

MILLER, *P.J.,* March 25, 1993—Here we decide whether or not the defendant made an intelligent and voluntary waiver of the right to counsel at the time he made an inculpatory statement to the police.

### STATEMENT OF FACTS

In this close case the facts are critical, especially as to the events that took place immediately surrounding the moment when the interview resumed. We recite the facts in narrative form. This narrative constitutes our findings of fact as required by Pa.R.Crim.P. 323(i).

Defendant is accused of committing rape, statutory rape, involuntary deviate sexual intercourse, corruption of minors, and indecent assault. All of the alleged crimes arose

out of the same incident. The victim, J.L.W., was ten years old at the time the crimes occurred. Trooper Peter C. Schaefer, a member of the Pennsylvania State Police Criminal Investigation Unit, began an investigation into the crimes in July of 1992 after he was contacted by Robin Anthony, the mother of the victim. Trooper Schaefer interviewed the victim on July 21, 1992 in the presence of the victim's mother and a representative of Children & Youth Services. After the interview, the trooper concluded that defendant and one Bernard Messina had sexually abused J.L.W.

Some time between July 21st and 29th, Trooper Schaefer called defendant to inform him that he was a suspect in the J.L.W. case and asked him to come to the police station to be interviewed about the incident. The trooper also informed defendant that he would be arrested and arraigned after the interview was over. During the phone conversation Trooper Schaefer did not tell defendant that he had the right to have an attorney present during the interview.

Defendant arrived at the police station at noon on July 30, 1992 for the interview. Barbara Straub, a caseworker for Children & Youth Services, who had been investigating the incident, was present for the interview. Trooper Schaefer conferred in private with Barbara Straub and then Straub, Schaefer, and defendant sat down at a conference table at approximately 12:15 p.m. Trooper Schaefer first informed defendant that he would not be arrested that day because the trooper had other business to do and that defendant would be called and told when charges would be filed against him.

162

Trooper Schaefer then read the defendant his *Miranda*[1] rights from the State Police rights warning and waiver form. The form provides as follows:

"You have an absolute right to remain silent and anything you say can and will be used against you in a court of law. You also have the right to talk to an attorney before and have an attorney present with you during questioning. If you cannot afford to hire an attorney, one will be appointed to represent you without charge before any questioning, if you so desire. If you do decide to answer questions, you may stop any time you wish and you cannot be forced to continue."

Immediately after the defendant was informed of his rights, defendant told the trooper he would like an attorney. Defendant elected to have someone present then. Trooper Schaefer stood up and closed his file; indicated that the interview was over; and then informed the defendant "that since he was not under arrest that we were not going to provide him with an attorney at that time." The exact conversation that took place next is not clear. The trooper testified that he was not clear on exactly what took place but he believes that the very next thing that happened was that the defendant said he did not want an attorney "now," that he would get one on his own and that he wanted one at the hearing. The defendant was equally unclear about what took place next. He said that the trooper told him he could have counsel at the hearing and that "things might change at the hearing." Defendant then said that he did not want an attorney then; he wanted

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

to have an attorney provided for him when he went to court and asked Trooper Schaefer about the possibility of obtaining counsel free of charge. Trooper Schaefer stated that he could not make the determination about defendant's eligibility for free counsel. Schaefer told him he could get an attorney later on.

Defendant then agreed to be interrogated and Trooper Schaefer sat down, again read the rights warning waiver form to defendant, and had defendant sign the form. Trooper Schaefer commenced interrogation of the defendant and defendant confessed to sexually molesting the victim and to attempting to insert his penis in her vagina. Trooper Schaefer asked defendant if he would make a written statement of his confession. Defendant asked Trooper Schaefer to write down his confession. The trooper did write down what defendant had said and defendant acknowledged the content of the statement by signing at the bottom.

A preliminary hearing was held on August 28, 1992 before District Justice Ronald A. Cole, Sr. and defendant was arraigned in our court on September 25, 1992.

Defendant filed his omnibus pretrial motion on January 12, 1993. Defendant contends that his confession should be suppressed because it was obtained in violation of his *Miranda* right to counsel and that the indictment for certain of the charges should be quashed because of lack of evidence of penetration. Defendant also seeks a discovery order for Children and Youth Service records that pertain to this case. The discovery issue was addressed in our March 2, 1993 order.

We now decide the defendant's omnibus pretrial motion.

## DISCUSSION

### Motion to Suppress

The suppression motion involves a narrow issue: did Trooper Schaefer's statement about the Commonwealth not going to provide counsel for the interrogation violate defendant's right to counsel as provided in *Miranda v. Arizona, supra.*

In approaching the ultimate issue and decision we look at the circumstances in their totality. We determine if the defendant was in custody and subject to interrogation. If so, was he properly advised of his rights under *Miranda?* Did he invoke his right to counsel? If so, the interview should cease unless the defendant initiated and rekindled the conversation and interview *and* knowingly and intelligently waived his right to counsel.

The Commonwealth admits that defendant was subject to custodial interrogation and defendant does not contend that his Sixth Amendment right to counsel was violated by the Commonwealth.

In *Miranda v. Arizona,* the United States Supreme Court determined that the prohibitions under the Fifth and Fourteenth Amendments against compelled self-incrimination requires that custodial interrogation be preceded by advice that the suspect has the right to remain silent and also the right to the presence of an attorney. In addition, law enforcement officials must follow certain procedures to ensure that the suspect's rights are honored. The interrogation must cease if the accused indicated a desire to remain silent. If the accused requests counsel, the interrogation must cease until an attorney is present.

An accused can waive the right to counsel and the right to remain silent if the waiver was voluntary and knowing. The burden of proving a voluntary and knowing waiver rests with the prosecution by a preponderance of the evidence. *Miranda v. Arizona,* 86 S.Ct. at 1630, See also, *Commonwealth v. Probst,* 398 Pa. Super. 44, 51, 580 A.2d 832, 836 (1990), *alloc. denied,* 527 Pa. 609, 590 A.2d 296 (1991). Where counsel is absent, as was the case here, the Commonwealth must meet a "heavy burden" by demonstrating that the defendant acted voluntarily in making a knowing and intelligent waiver of his privilege against self-incrimination and his right to retained or appointed counsel. *Miranda, supra* at 1628. *Id.*

The Supreme Court has articulated standards to determine whether an accused has waived his right to counsel when the *Miranda* rights have been read to him and when an accused has invoked his right to counsel.

In *Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986), the court held that the police not informing the accused that an attorney was trying to contact him did not affect the validity of his waiver of his *Miranda* rights. The court provided further explanation of its requirement in *Miranda* that a suspect must voluntarily and knowingly waive his rights.

"First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances sur-

rounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Moran, supra* at 421. (citations omitted)

In *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the court noted that after a defendant has invoked his right to counsel, a waiver is not proven solely by the defendant voluntarily responding to interrogation.

"...[W]aivers of counsel must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.' " *Id.* at 385. (citations omitted)

In addition, the court promulgated additional procedural safeguards that law enforcement officials must follow after an accused has invoked his right to counsel.

"...[W]e now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* at 386.

In *Smith v. Illinois,* 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984) (per curiam), the court noted that the prophylactic rule announced in *Edwards v. Arizona* entails two separate inquiries.

"First, courts must determine whether the accused actually invoked his right to counsel. Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked."

Our Supreme Court addressed the issues of what constitutes a sufficient invocation of the right to counsel and what constitutes an adequate waiver after the right has been invoked in *Commonwealth v. Hubble,* 509 Pa. 497, 504 A.2d 168 (1986) (plurality opinion), *cert. denied, Hubble v. Pennsylvania,* 477 U.S. 904, 106 S.Ct. 3272, 91 L.Ed.2d 563 (1986). The defendant in *Hubble* was interviewed by the police on several occasions prior to the day when the defendant uttered the challenged confession to the murders. On each occasion, he was read and expressly waived his *Miranda* rights. The defendant also was acquainted with his *Miranda* rights due to three prior arrest and convictions. On the date the challenged confession was rendered, the defendant again was informed of his *Miranda* rights, signed a written waiver form, and demonstrated a willingness to talk freely. He was being advised by his wife.

After several hours of questioning, the trooper asked the defendant if he would give a taped-recorded statement. The defendant's wife suggested that he get an attorney

and the defendant then replied "I want a lawyer," followed by "I want a public defender." The trooper responded: "Dave, *you can call whoever you want to call.* I do not believe that a public defender will come out to talk to you because you were not arrested. We are not accusing you of any crime. We're taking [sic] about what Bob had told you. That is all we're concerned with at this particular time, *but you are willing or you're able to call whoever you wish to call."* *Id.* at 507-508, 504 A.2d at 173.

The defendant said that he wanted to call an attorney who previously had represented him when the attorney had been a public defender. He could not reach this attorney and next called his probation officer, who advised him to call the public defender's office. The defendant did not attempt to call the public defender's office or anybody else. When the trooper stated that he would take the defendant and his wife home, the defendant requested to stay and converse with his wife. The trooper then told the defendant that the police had obtained information linking the defendant to the scene of the crimes. About a half hour after the trooper had told the defendant of the incriminating information, the defendant confessed when the trooper asked him if he had participated in the crimes.

Justice Larsen, writing the opinion announcing the judgment of the court, found that the defendant never invoked his right to counsel and, even if he had, the defendant subsequently waived his right to counsel.

The defendant did not clearly and unequivocally invoke his right to counsel and thus the *Edwards* prohibition

against all further police-initiated interrogation did not apply to the case. The defendant only requested to call a particular attorney and did not attempt to call any other attorney even though his probation officer suggested to him that he call the public defender's office. *Hubble, supra* at 511, 504 A.2d at 175.

In *Commonwealth v. Zook,* 520 Pa. 210, 553 A.2d 920 (1989) the defendant, who was under arrest, interrupted the interrogation to ask if he could use the phone to call his mother to see if she could get him an attorney. The Supreme Court held that the defendant clearly invoked his right to counsel. In *Commonwealth v. Probst, supra* at 51, 580 A.2d at 836 a defendant's statement that he was not sure that he should continue without an attorney present did not constitute an invocation of the right to counsel. In *Commonwealth v. Davis,* 388 Pa. Super. 224, 231, 565 A.2d 458, 462 (1989) a defendant's reply that "I have a lawyer" did not constitute an assertion of the right to counsel. Having decided that the defendant invoked his right to counsel we now move to the next step to determine whether he or the police initiated or prompted further interrogation and/or whether the police misled the defendant. In *Hubble, supra,* the court found that the defendant initiated further contact with the police. The court relied on *Oregon v. Bradshaw,* 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983) where the defendant's question "well, what is going to happen to me now?" amounted to the defendant's initiation of further conversation with the police.

In *Zook, supra,* the Supreme Court held that the police led the defendant into additional interrogation. There the

defendant wanted to call his mother to see if she could get him· an attorney. The officer asked him, "are you saying you want us to stop questioning you until you have. an .attorney present?" The defendant then replied "No, go ahead· and finish with what you are doing" and he subsequently confessed. Our Supreme Court distinguished the facts in *Zook* from the *Hubble* case. The defendant in *Hubble* unilaterally initiated further. interrogation, but in *Zook* the defendant was led into additional interrogation by the police detective. *Zook, supra* at 216, 553 A.2d at 923.

The issue of a police officer inducing a defendant not to pursue a request for counsel was addressed in *Commonwealth v. Gibbs,* 520 Pa. 151, 553 A.2d 409 (1989), *cert. denied, Pennsylvania v. Gibbs,* 493 U.S. 963, 110 S.Ct. 403, 107 L.Ed.2d 369 (1989). After the defendant was read his *Miranda* rights, he made the statement, "Maybe I should take [sic] to a lawyer. What good would it do me to tell you?" The officer replied that he would inform the district attorney of his cooperation "for whatever good that would be." The defendant then signed a waiver of his rights form and made inculpatory statements. The trial court refused to suppress the statements and the Supreme Court reversed.

The Supreme Court held that the officer's responses to the defendant's question constituted an impermissible inducement to the defendant not to pursue his ·ambiguous inquiry regarding the presence of an attorney. The decision in *Hubble* was distinguished. "Finally, in *Hubble* we made a crucial finding that the suspect was not misled by the erroneous police statement that the public defender would

not travel back to the barracks, and we reiterated that conclusion in our opinion....We emphasize the absence of any misleading act because it is readily apparent that an opposite finding in *Hubble* would have resulted in a different outcome." *Id.* at 155, 553 A.2d at 410. See *Commonwealth v. Waggoner,* 373 Pa. Super. 23, 540 A.2d 280 (1988), *alloc. denied,* 520 Pa. 616, 554 A.2d 509 (1988), *cert. denied,* 490 U.S. 1031, 109 S.Ct. 1769, 104 L.Ed.2d (1989), where the court found that the defendant's statement, "I can't afford a lawyer," should have prompted the officer to ensure that the defendant understood he could have a lawyer appointed free of charge. See also, *Commonwealth v. Holloway,* 524 Pa. 342, 350, 572 A.2d 687, 689 (1990), where the court reaffirmed that an accused's waiver of counsel must be knowing and intelligent.

Turning to the facts in our case, Trooper Schaefer read the defendant his rights and the defendant then asked for an attorney. The trooper got up and informed defendant that he would not give him an attorney then and said the interview was over. The defendant in fact was entitled to have an attorney present at the interrogation. The exact conversation between Schaefer and defendant in the next few seconds is not clear. The trooper testified that he was not clear on exactly what took place but he believes that the very next thing that happened was that the defendant said that he did not want an attorney "now," that he would get one on his own and that he wanted one at the hearing.

The defendant was equally unclear about what took place next. He said that the trooper told him he could

have counsel at the hearing and that "things might change at the hearing." He said he asked for an attorney and did not get his answer. Who really initiated the next conversation after the defendant indicated he wanted counsel? The trooper did when he said he would not give the defendant counsel then. The defendant had invoked his right to counsel and the prophylactic rule of *Edwards v. Arizona, supra,* was thus in effect.

If the defendant made the next statement, that is he did not want counsel at that time but wanted one at the hearing, then that coupled with his subsequent reading and signing of a written waiver would make the confession legally proper. If, on the other hand, the trooper initiated the next conversation that would be impermissible.

We conclude that the trooper did make the next statement and/or impermissibly induced the defendant's waiver of counsel after he first asserted his right to counsel.

Immediately after the defendant said he wanted counsel the trooper told him that he would not give him counsel at that point. There was then a discussion about getting counsel at a later date for the hearing. The defendant could not make an informed and intelligent decision whether to waive his right to counsel because he was told by the trooper that he could have counsel but could not have one at that particular interview.

Our case is distinguishable from *Hubble.* There was abundant evidence in *Hubble* that the defendant was well aware that he had the right to have an attorney present during custodial interrogation regardless of what the officer told him. Moreover, the court found that the officer did not mislead the defendant because he had encouraged

the defendant to call anybody he wanted to. Unlike the defendant in *Hubble,* defendant here was unfamiliar with police interrogation procedures and requested counsel after his *Miranda* warnings were read to him for the first time. Trooper Schaefer did not offer to let defendant call anybody or give the defendant any further explanations. Therefore, under the totality of the circumstances, the Commonwealth has not met its burden of proving a knowing and intelligent waiver of the right to counsel. See *Edwards v. Arizona, supra* at 385; *Oregon v. Bradshaw, supra* at 413; *Commonwealth v. Zook, supra* at 216, 553 A.2d at 923.

If defendant had stated that he wanted an attorney for the court proceedings right after he previously had stated that he wanted an attorney the request for counsel would have been ambiguous. Trooper Schaefer's misleading statement, made after the defendant stated that he wanted an attorney and before the defendant stated he wanted an attorney for the court proceedings, was the initiation of interrogation after the defendant had requested counsel because it reasonably led the defendant to make additional statements. See *Smith v. Illinois, supra* at 495; *Commonwealth v. Zook, supra* at 216, 553 A.2d at 923.

We find no evidence that defendant knew he could have counsel present at the interrogation in spite of the trooper's misinformation. Under the totality of the circumstances, the Commonwealth has not proved that defendant knowingly and intelligently waived his *Miranda* right to counsel. See *Moran v. Burbine, supra* at 421; *Commonwealth v. Gibbs, supra* at 155-156, 553 A.2d at 410.

The statement must be suppressed because the trooper initiated further conversation and interrogation after the defendant invoked his right to counsel; and/or the defendant was misled by the statement that the trooper could not get counsel for the interview.

## MOTION TO QUASH/WRIT
## OF HABEAS CORPUS

Defendant contends that in this case evidence of penetration is required to prove the crimes of rape, statutory rape, corruption of minors, and indecent assault. That is true as to rape and statutory rape.

The type and quantum of proof that is necessary to hold a defendant for trial was summarized by the Superior Court in *Commonwealth v. Snyder,* 335 Pa. Super. 19, 483 A.2d 933 (1984).

"The question ... is to determine whether the evidence received at the preliminary hearing presented sufficient probable cause to believe that the appellees committed the offenses for which they are charged. The quantity and quality of evidence presented there 'should be such that if presented at trial in court, and accepted as true, the judge would be warranted in allowing the case to go to the jury.' *Commonwealth ex rel. Scolio v. Hess,* 149 Pa. Super. 371, 27 A.2d 705 (1942). The Commonwealth's burden at a preliminary hearing is to establish at least prima facie that a crime has been committed and that the accused is the one who committed it. *Commonwealth v. Mullen,* 460 Pa. 336, 333 A.2d 755 (1975) ... Proof beyond a reasonable doubt is not required, nor is the criterion to show that proof beyond a reasonable

doubt is possible if the matter is returned for trial. However, proof, which would justify a trial judge submitting the case to the jury at the trial of the case, is required ... and the evidence must read in the light most favorable to the Commonwealth's case. *Commonwealth v. Zeringo,* 214 Pa. Super. 300, 257 A.2d 692 (1969)." *Id.* at 23, 483 A.2d at 935.

The alleged victim's testimony at the preliminary hearing is direct evidence of penetration. On direct and cross-examination, the victim clearly stated that she saw the defendant's penis penetrate her and that she felt his penis inside of her. (Preliminary hearing transcript at pp. 13, 14, 38, 40, 51 and 57.) After examining the preliminary hearing transcript, we find that the testimony of the alleged victim demonstrates probable cause to believe that the defendant penetrated the victim's vagina with his penis.

Although the victim's credibility may have been impeached at the hearing, the weight to be accorded her testimony is not a proper consideration in determining whether a prima facie case exists. *Commonwealth v. Wojdak,* 502 Pa. 359, 466 A.2d 991 (1983). The Commonwealth has sufficiently demonstrated evidence of penetration and we therefore deny the motion to quash/writ of habeas corpus.

Defendant also has moved to suppress the use of the July 30, 1992 confession at trial because the Commonwealth will not be able to establish the corpus delicti of the aforesaid crimes without the use of his confession. We do not address the corpus delicti issue because of our finding that the defendant's confession was obtained in violation of his *Miranda* right to counsel.