J-S49005-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAWN SADIK, | : | |
| | : | |
| Appellant | : | No. 889 WDA 2016 |

Appeal from the PCRA Order May 23, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0000811-2008

BEFORE:    DUBOW, J., SOLANO, J., and FITZGERALD J.[*]

MEMORANDUM BY DUBOW, J.:                         **FILED DECEMBER 20, 2017**

Appellant, Shawn Sadik, appeals from the Order entered in the Allegheny County Court of Common Pleas denying his first Petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-46. Upon careful review, we affirm.

On direct appeal, this Court summarized the pertinent facts as follows:

> In the early morning hours of July 13, 1993, Pittsburgh police found the naked, bleeding body of Mary Mitchell lying on a sidewalk near the entrance to a park.  Her head was swollen, and she was gasping for air.  She had a large wound on her neck that was bleeding profusely.  It was later determined that a sharp object had been forced through her vagina, and into her intestine where it cut a blood vessel. After the attackers removed the object from her body, they placed it on the ground, where police later found it and identified it as a piece of aluminum window frame.

_____

[*] Former Justice specially assigned to the Superior Court.

Based on leads they received from the two men who found the victim in the park, police arrested [Appellant] and Stevenson Rose for the attack. When police arrested Rose they found a pair of blood spattered white shorts and a white tee shirt with blood on it in his room. When police arrested [Appellant] at his residence they found a pair of blood-stained Timberland black combat-type boots in his room.

[Appellant] agreed to be interviewed by police shortly after his arrest. He told them that he, Rose, and a third man saw the victim walk past them toward the park. She was with some young men who were saying that they wanted her to perform oral sex on them. [Appellant] said that twenty to thirty minutes later, Rose walked into the park and spoke with the young men. [Appellant], who had been in a nearby alley, then went into the park where he saw Rose punch the victim, who was unclothed. He knocked her to the ground and stated several times that he was going to kill the victim. [Appellant] then admitted that he kicked the victim once in the face and three times in the head. He estimated that Rose kicked the victim eighty times, and stated that during the seven or eight times that Rose fell on the victim, he would help [Rose] get back up. After the beating, Rose and [Appellant] left the victim bleeding in the park. She survived the attack.

In February 1994, a jury convicted [Appellant] of [C]riminal [A]ttempt ([H]omicide), [A]ggravated [A]ssault, [R]eckless [E]ndangerment, and [C]onspiracy. The court imposed consecutive sentences of ten to twenty years' incarceration for [A]ggravated [A]ssault and five to ten years' incarceration for [C]onspiracy. No sentence was imposed for the remaining convictions. [Appellant] filed a direct appeal, which this Court denied. *Commonwealth v. Sadik*, 664 A.2d 1059 (Pa. Super. 1995) (unpublished memorandum).

The victim spent several months in the hospital, and then was transferred to a rehabilitation hospital. Although she regained some level of consciousness, she was unable to recognize her children and was incoherent. She was completely bedridden, and could only move one arm. The victim was transferred to a nursing home where she remained for fourteen years until her death on September 17, 2007.

On October 8, 2007, [Appellant] was charged with [C]riminal [H]omicide in connection with the death of the victim, Mary

Mitchell. A jury convicted him of murder of the first degree, and on January 11, 2011, the court imposed a sentence of life imprisonment, with credit for time served since his arrest on July 7, 1993.

***Commonwealth v. Sadik***, 46 A.3d 806 (Pa. Super. 2012) (unpublished memorandum) (footnotes omitted).

Appellant filed a direct appeal, and on February 3, 2012, this Court affirmed Appellant's Judgment of Sentence. ***Id.*** Our Supreme Court denied Appellant's Petition for Allowance of Appeal on June 27, 2012. ***Commonwealth v. Sadik***, 47 A.3d 847 (Pa. 2012). Appellant filed a Petition for Writ of *Certiorari*, which the United States Supreme Court denied on October 9, 2012. ***Sadik v. Pennsylvania***, 568 U.S. 944 (2012).

On October 9, 2013, Appellant, represented by private counsel, filed a timely PCRA Petition. On November 2, 2015, the PCRA court held an evidentiary hearing on Appellant's PCRA Petition. The PCRA court denied Appellant's Petition on May 19, 2016.

Appellant timely appealed, and Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following four issues, *verbatim*, for our review:

1. Trial [c]ounsel rendered ineffective assistance by failing to challenge [Appellant's] confession.

2. Trial [c]ounsel rendered ineffective assistance by failing to investigate and pursue a defense based upon [Appellant's] intellectual disability.

3. Trial [c]ounsel rendered ineffective assistance by failing to adequately present a defense of voluntary intoxication.

- 3 -

4. [Appellant] is serving an unconstitutional sentence. [] A sentence of life imprisonment without parole for an individual who 1.) was under the age of 21 at the time of the offense and 2.) has an intellectual and developmental disability is unconstitutional under the United States and Pennsylvania [C]onstitutions.

Appellant's Brief at 11.

We review the denial of a PCRA Petition to determine whether the record supports the PCRA court's findings and whether its Order is otherwise free of legal error. **Commonwealth v. Fears**, 86 A.3d 795, 803 (Pa. 2014). "The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level." **Commonwealth v. Spotz**, 84 A.3d 294, 311 (Pa. 2014) (citation omitted).

### Ineffective Assistance of Counsel Claims

Appellant's first three issues contend that trial and appellate counsel provided ineffective assistance to Appellant. In analyzing claims of ineffective assistance of counsel, we presume that counsel was effective unless the PCRA petitioner proves otherwise. **Commonwealth v. Williams**, 732 A.2d 1167, 1177 (Pa. 1999). In order to succeed on a claim of ineffective assistance of counsel, Appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's performance lacked a reasonable basis; and (3) that the ineffectiveness of counsel caused the appellant prejudice. **Commonwealth v. Fulton**, 830 A.2d 567, 572 (Pa. 2003). "[Where] the underlying claim lacks arguable merit, counsel cannot

be deemed ineffective for failing to raise it." ***Commonwealth v. Koehler***, 36 A.3d 121, 140 (Pa. 2012). Appellant bears the burden of proving each of these elements, and his "failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." ***Commonwealth v. Daniels***, 963 A.2d 409, 419 (Pa. 2009).

To demonstrate prejudice, a petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Strickland v. Washington***, 466 U.S. 668, 694 (1984); ***accord Commonwealth v. Cox***, 983 A.2d 666, 678 (Pa. 2009). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. ***See Commonwealth v. Ali***, 10 A.3d 282, 291 (Pa. 2010). As our Supreme Court has made clear, "boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective." ***Commonwealth v. Paddy***, 15 A.3d 431, 443 (Pa. 2011).

Finally, "when it is clear that the party asserting a claim of ineffectiveness has failed to meet the prejudice prong, the claim may be dismissed on that basis alone without a determination of whether the first two prongs of the ineffectiveness standard have been met." ***Commonwealth v. Zook***, 887 A.2d 1218, 1227 (Pa. 2005) (citation

omitted). With this standard in mind, we address Appellant's first three issues.

*Motion to Suppress*

In his first issue, Appellant avers that trial counsel was ineffective for failing to file a Motion to Suppress Appellant's 1993 confession. A petitioner averring ineffective assistance of counsel based on the failure to file a motion to suppress must prove that the underlying suppression claim has merit. **Commonwealth v. Jones**, 942 A.2d 903, 909 (Pa. Super. 2008). Without such proof, a petitioner fails to meet his burden of showing that his ineffectiveness claim is of arguable merit. **Id.**

Relevant to the instant appeal, Appellant's 1993 confession was used as evidence against him in two prosecutions: the instant case, and in the 1994 trial on charges of, *inter alia*, Attempted Murder. Prior to Appellant's initial trial, his original counsel ("1994 Counsel")[1] filed an Omnibus Pre-Trial Motion averring that he lacked the mental capacity to make an intelligent, knowing, and voluntary waiver of his **Miranda**[2] rights. After a hearing, the suppression court denied Appellant's Motion. On appeal, this Court thoroughly analyzed the suppression court testimony, and ultimately agreed with the 1994 suppression court's findings that "[A]ppellant understood his

_____

[1] Unless otherwise specified by the designation "1994 Counsel" all references to trial counsel refer to counsel in the instant case.

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

- 6 -

*Miranda* rights and issued a voluntary waiver of those rights." ***Commonwealth v. Sadik***, No. 630 PITTSBURGH 1994, unpublished memorandum at 7 (Pa. Super. filed May 16, 1995).

At the PCRA hearing in the instant case, Appellant's 2008 trial counsel testified that he did not seek to suppress Appellant's 1993 confession in the 2008 trial because it had already been deemed admissible in the 1994 trial. Appellant did not present any new evidence that would support a Motion to Suppress, but instead relied entirely on the evidence presented in the 1994 suppression hearing. The only "new evidence" that he presented is his general claim that advances in both science and case law since 1994 reflect a better understanding of how cognitive deficiencies can increase the likelihood of false confessions. Appellant's Brief at 16-18.

Our review indicates that Appellant failed to meet his burden of proving that the underlying claim has merit or that he was prejudiced by trial counsel's failure to revive the suppression motion. In light of the fact that the same confession had previously been found admissible, and the admissibility had been upheld on an appeal before this Court, trial counsel's decision not to file a Motion to Suppress was reasonable. The parties are already familiar with this Court's thorough analysis of the voluntariness of Appellant's confession, and we need not replicate it here. ***See Sadik, supra*** at 2-7. Appellant's citations to a single case and a single law review article fail to establish that either science or the law have evolved such that there is

a reasonable probability that Appellant's 2008 counsel would have prevailed where his 1994 counsel had failed.

*Voluntary Intoxication Defense*

In his second issue, Appellant avers that trial counsel failed to prepare and present an intoxication defense. Appellant's Brief at 19-22.

Contrary to Appellant's averment, trial counsel **did** present a defense of voluntary intoxication at Appellant's trial. Trial counsel called as a defense witness Appellant's brother, who testified that he was present when Appellant returned home after the beating, and that Appellant was drunk, unsteady on his feet, and smelled of alcohol. N.T., Jury Trial, at 334-35.[3]

In her closing argument, trial counsel pointed out that in his statement to police, Appellant told officers that he had been drinking vodka prior to the assault. *Id.* at 350-51. She used the brother's testimony and Appellant's statement to make a voluntary intoxication argument, arguing to the jury that Appellant's voluntary intoxication could reduce the charges from First-degree Murder to Third-degree Murder. *Id.* at 349-50. Finally, the trial court instructed the jury on voluntary intoxication as a defense to First-degree Murder. *Id.* at 396-97.

Appellant concedes that trial counsel presented a defense of voluntary intoxication, but avers that the defense was inadequate because trial counsel

_____

[3] The testimony from Appellant's multi-day trial appears in a single volume and is not separated by date.

failed to present evidence that Appellant "drank half a fifth of vodka." Appellant's Brief at 22. Although Appellant makes the bald assertion that he was prejudiced, he fails to articulate how the outcome of his trial would have been different if the jury had heard the exact amount of vodka he allegedly consumed that night. Given the other evidence of intoxication that trial counsel presented and argued to the jury, we conclude that Appellant has failed to meet his burden of establishing he was prejudiced by trial counsel's alleged failure to adequately prepare a voluntary intoxication defense.

*Intellectual Disability Defense*

In his final ineffective assistance claim, Appellant avers that trial counsel was ineffective for failing to "offer evidence of [Appellant's] intellectual disability to attempt a diminished capacity defense or to attempt to refute the evidence of specific intent." Appellant's Brief at 23-24.

As noted **supra**, our Supreme Court has previously stressed that "boilerplate allegations and bald assertions" are insufficient to satisfy a petitioner's burden of establishing a lack of reasonable basis or the resulting prejudice. **Paddy, supra** at 443.

Appellant's entire argument on this claim consists of the following two sentences and a single citation:

> There is no valid legal strategy in failing to adequately investigate and present an argument that a defendant lacked the specific intent to kill in a criminal homicide case. The evidence of [Appellant's] specific intent was not so overwhelming as to support the conclusion that the jury would have convicted had it heard the evidence of the intellectual disability. **See generally**

> ***Commonwealth v. Wright***, 961 A.2d 119 (Pa. 2008) (concluding that there is not prejudice when the evidence of guilt is overwhelming).

Appellant's Brief at 24. Appellant failed to adequately develop this claim, and is not entitled to relief.[4]

### Illegal Sentence Claim

In his final issue, Appellant avers that he is serving an illegal sentence based on ***Miller v. Alabama***, 567 U.S. 460 (2012), and ***Atkins v. Virginia***, 536 U.S. 304 (2002). Our review of the record indicates that neither case is applicable to the instant facts, and Appellant is not entitled to relief.

In ***Atkins v. Virginia***, the United States Supreme Court considered whether the execution of "mentally retarded offenders" violates the Eighth Amendment's ban on cruel and unusual punishment.[5] The Court recognized a myriad of ways in which individuals with intellectual disabities differ from their counterparts, including their diminished culpability and the increased likelihood of wrongful execution. ***Atkins, supra*** at 319-21. Ultimately the

---

[4] We note that, on direct appeal, this Court affirmed both the sufficiency and the weight of the evidence establishing that he had the specific intent required to support a conviction for First-degree Murder. ***Sadik***, 46 A.3d at 806. Although that review did not include evidence of Appellant's intellectual disability, Appellant's cursory argument fails to demonstrate how such evidence would have tipped the scales in his favor.

[5] In recent years the term "mentally retarded" has been replaced by the term "intellectual disabilities," the phrase we will use for purposes of this appeal.

Court concluded that "death is not a suitable punishment for a mentally retarded criminal." *Id.* at 321.

In *Miller v. Alabama*, the United States Supreme Court held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" *Miller, supra* at 465. The Court's reasoning was based on the recognition that children are fundamentally different from adults, lacking the maturity required to be considered fully culpable offenders and capable of ready rehabilitation as they develop into adulthood. *Id.* at 471-72.

Neither case applies to the instant set of facts. Although there is evidence to suggest that Appellant suffers from an intellectual disability, he has not been sentenced to death, and is, therefore, ineligible for relief under *Atkins*.

Nor is he entitled to relief under *Miller*. This Court has previously ruled that *Miller* does not apply to individuals who were 18 or older at the time they committed murder. *See Commonwealth v. Furgess*, 149 A.3d 90 (Pa. Super. 2016) (holding that *Miller* did not apply to a 19–year–old appellant convicted of homicide, even though that appellant claimed he was a "technical juvenile" and relied on neuroscientific theories regarding immature brain development to support his claim).

Although Appellant avers that he was eighteen at the time he beat Mary Mitchell and left her for dead on a sidewalk, the record is clear that Appellant was twenty years old on July 13, 1993. ***See, e.g.,*** Criminal Information, filed 1/24/08 (listing Appellant's Date of Birth as 10/1/1972); Sentencing Guidelines, filed 1/11/11 (same).

Accordingly, we conclude that Appellant is not entitled to relief on his claim that he is serving an illegal sentence.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/20/2017

- 12 -