J. S82019/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RICKY JUNIOR HERNANDEZ, | : | |
| | : | |
| Appellant | : | No. 439 MDA 2016 |

Appeal from the PCRA Order February 23, 2016
In the Court of Common Pleas of Berks County
Criminal Division at No.: CP-06-CR-0004760-2006

BEFORE: OTT, DUBOW, AND PLATT, JJ.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED JANUARY 17, 2017**

Appellant, Ricky Junior Hernandez, appeals from the Order entered in

the Berks County Court of Common Pleas dismissing his first Petition filed

under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. He

challenges the effective assistance of trial counsel. After careful review, we

affirm.

The PCRA court stated the relevant facts in its Pa.R.A.P. 1925(a)

Opinion as follows:

> [On the evening of August 5, 2006, Jose] Miranda approached
> Appellant and his two friends [at the Neversink Playground in
> Reading, Pennsylvania]. Appellant described Miranda as
> intoxicated, aggressive[,] and physically imposing. Miranda said
> something to Appellant that angered him. Appellant and his
> friend, Omar Tirado (Tirado), left the park to go to Appellant's

---

[*] Retired Senior Judge Assigned to the Superior Court.

house to retrieve a gun. Appellant went back to the park and shot Miranda in the chest at close range. After being shot, Miranda made his way to the porch of a neighboring home and collapsed. Miranda was transported to a hospital where he died shortly thereafter. Appellant later claimed Tirado, an eyewitness to the shooting, had told him Miranda had a knife. Appellant tried to get Tirado to change his testimony to back up Appellant's theory of self-defense and to say that Appellant had the gun on him at the park when the shooting occurred. Tirado told the jury about going to Appellant's home to retrieve a gun after the encounter with Mira[n]da and that he did not see a weapon on the victim during the encounter. The testimony at trial was clear that no knife or gun were ever found in the park, after the shooting, or on the victim's person. [Appellant voluntarily provided a written statement to police admitting that he shot Miranda because he felt intimidated and fearful.]

Appellant was charged by Criminal Information with one count [each] of [First-Degree Murder, Third-Degree Murder, Firearms not to be Carried without a License, Possession of an Instrument of Crime, and two counts of Aggravated Assault.] On February 15, 2008, after a jury trial lasting five days, the jury found Appellant not guilty of Murder of the First Degree, but guilty of the other crimes[.] The sentencing hearing was held on April 1, 2008; Appellant was sentenced, for Murder of the Third Degree, to [12 to 40 years' incarceration], with credit for 602 days. He received concurrent sentences on the other charges. Appellant did not file Post-[S]entence [M]otions or a direct appeal.

On March 17, 2009, Appellant filed a Post Conviction Relief Act Petition (PCRA), *pro se*[,] and PCRA counsel was appointed. New counsel entered his appearance on March 25, 2011[,] and PCRA counsel was permitted to withdraw. On July 22, 2011, Appellant filed an amended PCRA [P]etition and a hearing was scheduled for September 7, 2011. On September 11, 2011, Appellant's direct appeal rights were reinstated *nunc pro tunc* and he filed his Notice of Appeal to the Superior Court on September 27, 2011. On October 22, 2012, the Superior Court affirmed the [J]udgment of [S]entence. On September 25, 2013, the Supreme Court of Pennsylvania denied the request for review.

On August 15, 2014, Appellant, through counsel, filed the instant PCRA Petition, which we considered as his first. An evidentiary

hearing was held and the parties were given the opportunity to file briefs. On February 23, 2016, we denied Appellant's PCRA [P]etition.

PCRA Court Opinion, filed 5/24/16, at 2-3 (citations omitted).

Appellant filed a timely Notice of Appeal. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant presents three issues for our review:

I. Did the PCRA court commit an error of law or make a decision unsupported by the record when it concluded that trial counsel performed adequately despite not filing a meritorious motion to suppress [Appellant's] confession?

II. Did the PCRA court commit an error of law or make a decision unsupported by the record when it determined that trial counsel was effective despite not making a record of the preliminary hearing testimony when inconsistencies in the Commonwealth's witness accounts were central to the defense?

III. Did the PCRA court commit an error of law and ma[k]e a decision unsupported by the record when it found that trial counsel was effective despite requesting a prison sentence that was more than double the applicable minimum guideline term of imprisonment?

Appellant's Brief at 5.

We review the denial of a PCRA petition to determine whether the record supports the PCRA court's findings and whether its order is otherwise free of legal error. *Commonwealth v. Fears*, 86 A.3d 795, 803 (Pa. 2014). This Court grants great deference to the findings of the PCRA court if they are supported by the record. *Commonwealth v. Boyd*, 923 A.2d 513, 515 (Pa. Super. 2007). We give no such deference, however, to the court's

legal conclusions. ***Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa. Super. 2012).

To be eligible for relief pursuant to the PCRA, Appellant must establish, *inter alia*, that his conviction or sentence resulted from one or more of the enumerated errors or defects found in 42 Pa.C.S. § 9543(a)(2). Appellant must also establish that the issues raised in the PCRA petition have not been previously litigated or waived. 42 Pa.C.S. § 9543(a)(3). An allegation of error "is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S. § 9544(b).

The law presumes counsel has rendered effective assistance. ***Commonwealth v. Rivera***, 10 A.3d 1276, 1279 (Pa. Super. 2010). The burden of demonstrating ineffectiveness rests on Appellant. ***Id***. To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceedings would have been different." ***Commonwealth v. Fulton***, 830 A.2d 567, 572 (Pa. 2003). Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim. ***Commonwealth v. Jones***, 811 A.2d 994, 1002 (Pa. 2002).

First, Appellant must meet the "arguable merit" prong. "The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit[.]" *Commonwealth v. Pierce*, 645 A.2d 189, 194 (Pa. 1994) (citation omitted). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa. Super. 2004) (internal citation omitted).

Second, Appellant must meet the "no reasonable basis" prong. We apply the "reasonable basis" test to determine whether counsel's chosen course was designed to effectuate his client's interests. *Pierce*, *supra* at 194-95. "If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective." *Id*. (citation omitted)

Third, Appellant must meet the "prejudice" prong. "Prejudice is established when [a defendant] demonstrates that counsel's chosen course of action had an adverse effect on the outcome of the proceedings." *Commonwealth v. Chambers*, 807 A.2d 872, 883 (Pa. 2002) (quotation marks and citation omitted). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). "A reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Id*. "[A] criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. (quoting *Commonwealth v. Kimball*, 724 A.2d 326, 331 (Pa. 1999)).

In his first issue, Appellant contends that his trial counsel was ineffective for failing to file a Motion to Suppress his statement to police based on violations of his rights under the Fifth Amendment and *Miranda*.[1] Appellant's Brief at 17-18. Relying on *Commonwealth v. Zook*, 553 A.2d 920 (Pa. 1989), Appellant claims that officers continued questioning him after he invoked his right to counsel. Appellant's Brief at 20-21. After careful review, we conclude that Appellant's underlying suppression claim lacks arguable merit.

"The law is well-settled that a defendant who requests counsel at any time during a custodial interview is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Commonwealth v. Edwards*, 903 A.2d 1139, 1150 (Pa. 2006) (citation and quotation marks omitted). Our Supreme Court has previously held "that a confession given after a defendant invokes his right to counsel need not be suppressed where the

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

defendant: (1) initiated further communication, exchanges, or conversations with the police, and (2) knowingly and intelligently waived the right to counsel." *Id*.

The record indicates that Appellant initiated further conversation with police and then knowingly and intelligently waived his right to counsel. As the PCRA Court summarized, "The record shows that Appellant was given his *Miranda* rights and he waived his rights. Appellant voluntarily spoke to the police." PCRA Court Opinion at 5 (citation omitted).

Additionally, Appellant previously spoke to the police and successfully terminated police questioning on one previous occasion regarding the shooting. *See* N.T. Trial, at 628-37. On August 8, 2006, police brought Appellant in for questioning again. With respect to this issue, Criminal Investigator Angel Cabrera testified, in relevant part, as follows:

> **A**: […] I was advised that [Appellant] was up at the desk in custody. As soon as I exited my office and I'm going out in the hallway, I believe it was Officer Bowers who was bringing down [Appellant] already in handcuffs. So at that time I had taken -- it was me, Officer Bowers, and [Appellant]. And I opened the door to the main section and I had escorted him to Interview Room Number 1 in the main section of the criminal investigations division.
>
> **Q**: And what happened at that point?
>
> **A**: And at that point he sat there. We began -- I read him his Miranda rights. And as soon as I read him his Miranda Rights, I asked him three questions. The first question was, do you understand your rights as I have explained them to you. He said yes. I said are you willing to give a statement was the second question. He said yes. And the third question was, do you wish to speak to me with a lawyer and have him present during any

questioning and/or statement. And he said that he wanted a lawyer. At that time, as soon as he sputtered out those words, I immediately got up and began to leave with Sergeant Guy Lehman.

**Q**: Now, why did you do that? Why did you stop right there?

**A**: Because once he invokes his rights, he wants a lawyer, it all gets terminated. There's no further conversations to take place.

**Q**: What happened immediately after that?

**A**: As soon as I got up to leave and I'm leaving, he says, where am I going. I said, I'm leaving. You wanted a lawyer. He goes no, I'll talk. So then I went in to further -- so that he wouldn't be confused, I explained further Question Number 3 pertaining to a lawyer. I explained to him if he wants a lawyer, we stop. If he does not want a lawyer, we can talk. I told him if he decided not to have a lawyer and he wants to talk and during the interview he changes his mind, to say, Angel, stop, I want a lawyer, and we will stop.

**Q**: And after you made this explanation to him, what happened?

**A**: He said no, I'll talk.

*Id*. at 639-41. Investigator Cabrera then explained that he read Appellant his ***Miranda*** Rights, which Appellant waived, before taking Appellant's written statement using a typewriter. *Id*. at 644.

Appellant re-initiated this interaction with Investigator Cabrera after invoking his right to counsel, and the record abundantly shows that Appellant then proceeded to knowingly and intelligently waive his right to counsel. Accordingly, police did not obtain Appellant's statement in violation of his Fifth Amendment rights to remain silent and to counsel, and his ineffectiveness claim lacks arguable merit.

Moreover, the PCRA court noted that counsel had a reasonable basis for not seeking suppression of Appellant's statement: Appellant's "written statement to the police corroborated his theory of self-defense that trial counsel could use as a prior consistent statement if his client testified and was impeached." PCRA Court Opinion at 5. We agree. Counsel also assessed the merits of the suppression motion and "did not think Appellant's statement was able to be suppressed because of the circumstances under which it was taken." *Id*. at 4-5. As a result, Appellant's first ineffectiveness claim fails.

In his second issue, Appellant avers that his counsel was ineffective for failing to ensure that a stenographer transcribed his preliminary hearing. Appellant contends that this failure prevented him from cross-examining two civilian eyewitnesses at trial and impeaching them based on contradictory statements provided at the preliminary hearing. Appellant's Brief at 27.

We conclude that Appellant failed to demonstrate any prejudice by showing that there is a reasonable probability that the result of the trial would have been different without counsel's error.

First, Appellant cross-examined both witnesses at trial extensively, including about their previous statements to Investigator Cabrera. N.T. Trial, at 346-69, 422-58. The jury was, thus, well aware of any inconsistencies in their previous statements. Providing another source for

the same information would not have changed the outcome of the proceedings.[2]

Second, Appellant confessed to the shooting in a written statement, and he admitted at trial that he shot the victim. **See** Commonwealth Exhibit 67; N.T. Trial, at 734-37.

Based on our review of the certified record, Appellant has failed to demonstrate prejudice. Thus, his second ineffectiveness claim also fails.

In his third issue, Appellant avers that his counsel was ineffective for recommending a minimum sentence of 10 years' incarceration at Appellant's sentencing hearing. Appellant argues that "counsel was ineffective when he inexplicably requested a sentence more than twice as long as the low end of the mitigated range and requested a sentence of at least 10 years in prison." Appellant's Brief at 30. For support, Appellant repeats his sentencing arguments, including citing his lack of criminal history, lack of maturity, deep remorse, and gainful employment. **Id**. at 30-31.

The parties agreed that Appellant's prior record score was zero, and the offense gravity score was 14; the standard range of the guidelines was from 72 to 240 months' incarceration. N.T. Sentencing, 4/1/08, at 23, 33.

---

[2] Appellant does not indicate what, if any, additional information was presented at the preliminary hearing that was not produced in the witnesses' prior statements or their trial testimony. This lack of specificity is also fatal to Appellant's claim of prejudice. **Commonwealth v. Lassen**, 659 A.2d 999, 1007 (Pa. Super. 1995), *abrogated on other grounds by* **Commonwealth v. Stultz**, 114 A.3d 865 (Pa. Super. 2015).

After the Commonwealth presented victim impact testimony from several witnesses, Appellant's counsel stated the following to the trial court:

> The standard range for the minimum for murder three is anywhere from six years[,] 72 months, up to 20 years, 240 months. There's a reason that the court or legislature has done that and that's because every case is different, and the facts and circumstances of this particular case I don't think warrant the high end of the range. I think rather they require or rather warrant a lower end of the range.
>
> \* \* \*
>
> With respect to the hope of a life in the future, certainly making a sentence of 22 to 44 [years], which is what the Commonwealth is seeking, basically sends a message that we have absolutely no hope of rehabilitation, we will max you out or give you the longest possible sentence because of the act and we don't care what happens in the future.
>
> I believe that my client is somebody worth saving.
>
> \* \* \*
>
> [Whether] those acts warrant the top of the standard range, which is what [the Commonwealth] wants, or whether they warrant a more hopeful sentence[,] a sentence that allows him to work [t]orward a future, I think is subject to debate.
>
> We're asking the court to consider a sentence of 10 to 20 [years] on murder three, and we're asking the court to consider consecutive sentence of one to two with respect to the firearms not to be carried without a license for a total sentence [of] 11 to 22 [years] with the possessing instruments of crimes to run concurrent.

*Id*. at 26-29.

In addressing Appellant's claim, the PCRA court stated the following:

> Appellant has failed to show that his trial counsel was ineffective at his sentencing hearing. This Court had broad discretion in imposing the sentence that we did. Appellant's sentence does

not exceed the lawful maximum sentence we could have imposed and it was not as long a sentence as requested by the Commonwealth. Trial counsel had a reasonable strategy to request the minimum sentence. . . . Appellant fails to show how he was prejudiced by counsel's actions.

PCRA Court Opinion at 6. We agree.

Appellant failed to demonstrate that counsel lacked a reasonable basis for his sentencing recommendation. Our review of the certified record shows that counsel's strategy was reasonable in light of the statutory maximum sentence to which Appellant was exposed, the sentencing guidelines and applicable standard range, the potential for consecutively imposed sentences, and the other relevant circumstances unique to Appellant and his criminal conduct.

The record supports the PCRA court's findings and its Order is otherwise free of legal error. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/17/2017

- 12 -